UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| RAMONA ANNE PALMER, | ) |
| --- | --- |
| Plaintiff, | ) ) ) |
| vs. | ) CAUSE NO. 3:17-CV-782-PPS/MGG ) |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Ramona Palmer appeals the Social Security Administration's decision to deny her protective application for Supplemental Security Income under Title XVI of the Social Security Act. Palmer alleges a disability due to, generally speaking, back issues, hip, knee, left shoulder, arthritis in shoulder, anxiety, sciatica, chronic lower back pain, Ehlers-Danlos, and dyslexia. [Tr. 102-03.][1] An administrative law judge ruled Palmer was not disabled within the meaning of the Social Security Act and that she had the residual functional capacity (RFC) to perform the full range of sedentary work.

Palmer challenges the ALJ's decision on three grounds. First, she argues the ALJ erred by not properly evaluating her pain. Second, Palmer takes issue with the ALJ's evaluation at Step 5 that she is capable of performing the full range of sedentary jobs.

---

[1] Citations to the record will be indicated as "Tr. __" and indicate the pagination found in the lower right-hand corner of the record found at DE 10.

Third, she argues that the ALJ improperly found her alleged mental impairments were non-severe. These arguments are unavailing and none are grounds for reversal.

The ALJ found that Palmer had the severe impairments of Ehlers-Danlos syndrome which manifests itself in overly flexible joints. The ALJ further found that Palmer had mild degenerative changes in various joints. [Tr. 18.] Aside from this severe impairment, Palmer had a number of other medical challenges which are fully recounted in the ALJ's opinion and which need not be repeated here. [*See* Tr. at 18-23.]

Let's start with a description of the role I play in reviewing the work of an ALJ. I am not supposed to determine from scratch whether or not Palmer is disabled. Rather, I only need to determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *See* 42 U.S.C. §405(g); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). My review of the ALJ's decision is deferential. This is because the "substantial evidence" standard is not a particularly rigorous one. In fact, the Supreme Court announced long ago that the standard is even less than a preponderance-of-the-evidence standard. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Of course, there certainly has to be more than a "scintilla" of evidence. *Id.* So in conducting my review, I cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nonetheless, the review is a light one and the substantial evidence standard is met "if a reasonable person would accept it as

2

adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

### **Evaluation of Pain**

Palmer first maintains that the ALJ failed to properly evaluate her pain. This argument seems to have a few prongs, including her belief that the ALJ failed to consider the aggregate effect of her ailments, the RFC is improper, and the ALJ discounted her subjective complaints of pain. [DE 19 at 14-16.]

Palmer's argument that the ALJ failed to consider the aggregate effect of her ailments and pain is completely lacking in detail. She lists a number of diagnoses, and then drops a footnote which refers me to the "notable large footnotes" in the statement of fact which again merely list references to her illnesses or pain in the record. [DE 19 at 9-10.] This is entirely unhelpful. Each party bears the burden of pointing out specific portions of evidence in the court's possession to support her case. *Hermann v. Astrue*, No. 07 C 6914, 2010 WL 356233, at *13 (N.D. Ill. Feb. 1, 2010). Palmer's brief does not do this — it fails to connect citations to the record with any meaningful legal analysis.

On the other hand, the ALJ *did* account for the evidence of pain in the record — he analyzed Palmer's pain for 6 pages in his opinion. [Tr. 24-30.] The ALJ considered Palmer's daily activities, the type of treatment she received for pain or other symptoms, and the type and dosage of medication. [Tr. 24.] The ALJ specifically acknowledged Palmer's hearing testimony that she could not work because she hurts, her accounts

3

with struggles of daily living activities (like having to use both hands to lift a gallon of milk), her reports that her Ehlers' Danlos symptoms were worsening, and the testimony from Palmer's future daughter-in-law and friend. [Tr. 24-25.] The ALJ addressed her complaints of pain head-on, but found "despite a record with many alleged symptoms and subjective complaints, her allegations for disabling symptoms are not supported by the objective medical findings and diagnostic testing. The medical evidence reflects that the claimant has complaints, but her allegations are unsupported [by] the few objective findings and x-rays." [Tr. 25.]

The ALJ then laboriously went through the medical evidence in the record related to pain, noting things like "it is true that Dr. Bader diagnosed Ehler's Danlos hyperextensible type but aside from a loose elbow, thumb and finger joints, she was not reported with other significant abnormalities" [Tr. 26]; December 2016 x-rays of the back which were considered negative, or revealed normal or minimal findings of the lumbar spine [Tr. 27]; despite knee complaints, x-rays revealed well maintained joint spaces, patellar tilt and no fracture [Tr. 27]; Oaklawn psychiatric center diagnosed Palmer with no restrictions on her activity level, and stated she could participate in 20-30 minutes of aerobic activities [Tr. 690]; the treatment notes failed to establish a severe respiratory condition [Tr. 28]; in late 2015, Palmer reported she rode a bike 5 times per week for 2 miles [Tr. 691]; and the consultative examination by Dr. Gupta on August 15, 2015 revealed:

> no anatomical deformities, no spinous or paraspinal tenderness, full ranges of motion in all spines, negative straight leg raises,

4

> normal curvature in all spines, no stiffness of effusion in the upper extremities, no edema, only mild pain in the left shoulder with normal motion, "5/5" strength in the upper extremities, full ranges of motion in all lower extremities with 5/5 strengths, normal gait, the ability to arise without difficulties, normal grip strength, normal coordination, preserved memory, 2/4 deep tendon reflexes and good fine finger manipulative abilities.

[Tr. 28, Ex. 7F.] In sum, the ALJ found that "[t]hese findings do not support allegations for greater limitation of function." [Tr. 28.]

Additionally, the ALJ concluded that Palmer "failed her burden to establish greater limitations of function, than those reflected in the residual functional capacity, and lasting twelve months in duration. The claimant failed her burden of documenting a logical bridge between allegations, the record and greater limitations of function." [Tr. 29.] I agree with the conclusion — and in this appeal, Palmer still has not pointed me to anything specifically in the record, or articulated any specific legal argument in support of her bald claim that the ALJ did not properly evaluate Palmer's pain. Just saying it does not make it so, and in light of the ALJ's detailed pain analysis supported by substantial evidence in the record, Palmer's claim fails.

To the extent Palmer asserts the RFC is incorrect, this argument also does not point me to anything in the medical record supporting the contention that she is limited in concentration, persistence and pace beyond what the ALJ assessed. "[I]t is not the Court's obligation to scour the record in search of such evidence." *Crump v. Berryhill*, No. 3:17-cv-557, 2018 WL 4627217, at *2 (N.D. Ind. Sept. 27, 2018). Palmer claims that "she cannot last even five minutes while [sic] hurting before then at her prior hobby of

crochet." [DE 19 at 15]. She further says that the ALJ should have limited her sedentary position because she cannot sit through church service. *Id*. But these are similar to the other subjective complaints about Palmer's daily activities that the ALJ specifically addressed and discredited because the clinical findings and diagnostic test results simply did not support a finding of disability. [Tr. 24-29.]

The ALJ need not mention every piece of evidence in the record, but the RFC determination must provide an "accurate and logical bridge" between the evidence and the conclusion that the claimant is not disabled. *Zblewski v. Astrue*, 302 F. App'x 488, 492 (7th Cir. 2008); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). In this case, the ALJ did provide a detailed, accurate, and logical bridge between the evidence in the record and his ultimate conclusion. It is not my province to second-guess his findings that are well supported by evidence. *See Contreras v. Berryhill*, No. 16 CV 9037, 2017 WL 3592699, at *7 (N.D. Ill. Aug. 21, 2017) (affirming the Commissioner's decision where claimant did not point to any evidence of record suggesting she lacked the RFC to perform at the level determined by the ALJ.)

Palmer argues in her brief that the doctors who treated her "believed her pain was severe enough to prescribe a Norco and other pain medication, and inject her (for example) with Toradol, Norflex, and Dilaudid; all of the above being strong forms of pain relief." [DE 19 at 15]. The citation to this fact is contained in a footnote which reads as follows: "See also large footnote, *infra*, as mere of many myriad diagnostics, prescriptions, and assessments that would likely amount to some form of either

6

malpractice or breach of medical ethics to diagnose, prescribe, or otherwise assess if in the doctor's medical judgment there were questions as to whether the pain is real." [DE 19 at 15 n.104.] The problem is that I don't see anything in Palmer's statement of facts or in some so-called "large footnote" in her brief that discusses pain medication, much less points me to any evidence in the record about the alleged medication, and I will not do the foraging for her. *See Hermann,* 2010 WL 356233, at *12 (judges are not "archaeologists consigned to excavating masses of paper in search of possibly revealing information that might benefit the party whose briefs provided no clue of where to dig.").

Palmer's last challenge to the ALJ's analysis of her pain contends the ALJ did not sufficiently consider her subjective complaints of pain. There is a high burden in challenging the ALJ's treatment of her subjective statements, because a reviewing court may only reverse the assessment where it is "patently wrong." *Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015). This is because, as a witness to Palmer's testimony, the ALJ is in the best position to evaluate the believability of her statements. *Id.* I can only disturb the ALJ's evaluation of a claimant's symptom description if it is "unreasonable or unsupported." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). "Although an ALJ may not ignore a claimant's subjective reports of pain simply because they are not supported by the medical evidence, discrepancies between the objective evidence and self-reports may suggest symptom exaggeration." *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010). Indeed, "there is no presumption of truthfulness for a claimant's subjective

complaints; rather, an ALJ should rely on medical opinions based on objective observations and not solely on a claimant's subjective assertions." *Knox v. Astrue*, 327 F. App'x 652, 656 (7th Cir. 2009). In this case, as explained earlier in this opinion, I think the ALJ adequately explained why he found Palmer's subjective complaints out of proportion to the medical evidence in the record and Palmer's treatment history.

### Significant Number of Jobs in the National Economy

Palmer also argues that the ALJ erred by failing to demonstrate that she can perform a significant number of jobs that exist in the national economy. To the extent she is challenging the RFC, I have already found that it was supported by substantial evidence in the record.

To the extent Palmer claims "the ALJ erred in asserting a mere blanket 'full range' of sedentary work in this instance where it is far from clear what job numbers would have remained," she is off point. [DE 19 at 17.] The ALJ used Medical-Vocational Rule 201.21, also known as "Grid" Rule 201.21. [Tr. 31.][2] The Seventh Circuit has explained that "[w]hen a person has only exertional limitations, or when her non-exertional limitations are insignificant, the grids are dispositive on the issue of disability, and an ALJ may rely on the grids to determine whether a person is disabled." *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014). This is because the grid rules "take

---

[2]Grid Rule 201.21 applies to high school graduates between the ages of 45 and 49 whose non-transferable previous work was either skilled or semi-skilled. If an individual with such a profile is able to perform the full range of sedentary work, he or she is not disabled. Https://ssa.gov/OP_Home/cfr20/404/404-app-p02.htm (Last visited on March 17, 2019).

administrative notice that there are approximately 200 separate unskilled sedentary occupations, each representing numerous jobs, in the national economy." SSR 96-6p, 1996 WL 374185, at *3 (July 2, 1996). Since Palmer was found to be able to perform the full range of sedentary work, and I have upheld that finding, the "application of the grid rules themselves provides the substantial evidentiary support for an ALJ's step-five finding." *Wilhelm v. Berryhill*, No. 1:17-cv-22, 2017 WL 5248285, at *8 (N.D. Ind. Nov. 13, 2017).

### **Palmer's Alleged Mental Impairments**

Palmer's last argument is that the ALJ improperly found that her alleged mental impairments were not severe. [DE 19 at 18.] The ALJ spent five pages of his opinion considering Palmer's mental health, and properly concluding that her "medically determinable mental impairments of depressive disorder, generalized anxiety disorder and amphetamine type stimulant use disorder do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities for twelve months in duration, singularly or in combination and are therefore nonsevere." [Tr. 18.]

The ALJ took note that there was no documentation of ongoing mental health treatment prior to October 2015 through Oaklawn Psychiatric Center or another psychiatrist, psychologist, or even a counselor. [*Id.*] He then concluded the absence of such documentation does not support allegations for a severe mental impairment. [*Id.*] The ALJ also remarked that Oaklawn's treatment notes reflect some objective medical findings for symptoms during the period from October 2016 into early 2017, but "there

9

appears to be no treatment through Oaklawn from 2009 until late 2016." [Tr. 19.] Although Palmer tries to take the ALJ to task for chastising Palmer for not seeking psychiatric treatment, the ALJ did no such thing — he merely noted the absence of documentation of any ongoing mental health treatment. There is nothing invidious about this — it is the Plaintiff's burden to present medical evidence that she cannot work because of her mental limitations, and I don't think it is inappropriate for the ALJ to note the absence of such documented treatment. Plus, he did not consider that factor in a vacuum. The ALJ specifically noted that the lack of treatment, "when considered in light of the aforementioned absence of supportive objective medical findings through other treatment notes, undermine allegations for severe and ongoing mental symptoms and limitations of function." [Tr. 19.]

Although Palmer criticizes the ALJ for referring largely to doctors that did not specialize in psychology when reviewing treatment notes, that isn't the ALJ's fault — those are the treatment notes submitted by Palmer. I agree with the ALJ's assessment that treatment notes from 2013 through December 2016 reflect a few intermittent complaints overall but generally reflect the presence of good or normal findings, or even the denial of mental health symptoms. [Tr. 19.] Further, after Palmer started treatment, on October 30, 2016, she reported feeling better. [Tr. 645.] Oaklawn treatment notes from February 2017 established that Palmer was in better spirits and she felt that she had made "great progress." [Tr. 615.] In January 2017, Michiana internal medicine notes reflect Palmer's anxiety state was stable and asymptomatic. [Tr.

695.] Moreover, Dr. Gupta's consultative examination report dated August 15, 2015 notes that Palmer was diagnosed with anxiety in 2001 and that she complains of shortness of breath and chest pain in the center of her chest which is relieved by calming down. [Tr. 523.] No mental impairments were listed under the "impression" section of Dr. Gupta's report. [Tr. 526.] In the absence of evidence that a mental impairment affects a plaintiff's ability to work, the ALJ is not required to include mental limitations in the RFC. *See Ketelboeter v. Astrue*, 550 F.3d 620, 626 (7th Cir. 2008).

There was another consultative examination by psychologist Dr. Wade in August 2015, and he diagnosed Palmer with major depressive disorder, recurrent, mild, generalized anxiety disorder, and panic disorder. This was not a treating physician, but rather a referral by the Disability Determination Bureau for the purpose of completing a Mental Status Exam. [Tr. 518.] Although Palmer claims the ALJ improperly played psychologist in evaluating the consultative exam summary by Dr. Wade, I disagree.

Ultimately the ALJ gave "some weight" to Dr. Wade's opinion. [Tr. 21.] But the ALJ did not stop there — he specifically addressed and reconciled Dr. Wade's opinions with other information in the medical record. For example, the ALJ found Palmer alleged panic attacks and increased stressors in her life, but this was largely because of her allegation that she was in pain. [Tr. 20.] He discounted Palmer's allegations of loss of interest, and feeling worthless with insomnia because these allegations were made in the course of and in pursuit of her disability claim and "are not at all well supported by the medical treatment records through complaints, treatment sought or objective

medical findings noted previously." [Tr. 20.] Dr. Wade opined that Palmer's efforts to perform daily routines were impaired, but "this appeared to be based upon the claimant's own subjective statement that she believed her depression affected her daily functioning" and is not born out by the record except for a few months of treatment in late 2016 and early 2017. [Tr. 20.] Indeed, Palmer acknowledged cooking dinner about 5 times per week, making full meals, going to the library, and vacuuming every other day. [Tr. 520.] Thus, the ALJ assigned little weight to Dr. Wade's comments about Palmer's daily activities. Dr. Wade noted that she was cooperative, likely had good social interactions, had fair understanding, memory of task instructions, and fair concentration. [Tr. 520-21.] As such, it was appropriate for the ALJ to give some weight to Dr. Wade's opinions, because the ALJ considered many factors, analyzed the inconsistencies with the rest of the record, and considered the remainder of the treatment and examination records.

Lastly, the ALJ also considered the four broad areas of mental functioning set out in the regulations (the "paragraph B") criteria. [Tr. 21.] The ALJ concluded Palmer has no, to only mild limitation, in the area of understanding, remembering, or applying information [Ex. 6F]; she has no limitation in interacting with others and has good social skills; the medical evidence does not establish any limitations in concentration, persistence, or maintaining pace; and she has only mild limitations in adapting or managing oneself as she has indicated pain is her greatest limitation of function with respect to daily activities. [Tr. 21.]

Based upon the ALJ's thorough consideration of the two consultative examinations, the medical records, and the functional areas, there is substantial evidence to support his finding that Palmer's mental impairments were not severe.

**Conclusion**

The final decision of the Commissioner of Social Security denying plaintiff Ramona Palmer's application for disability insurance benefits is **AFFIRMED**.

The Clerk shall enter judgment in favor of Defendant and against Plaintiff.

**SO ORDERED**.

ENTERED: March 18, 2019.

/ s/ Philip P. Simon
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**